UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                                                                          CASE NO. 10176

CHARLES PAUL ALONZO, JR.                                            SECTION "B"
CAROLYN WILLIAMS ALONZO

    DEBTORS                                                                                           CHAPTER 7

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

E.H. MITCHELL & COMPANY, L.L.C.
    PLAINTIFF

VERSUS                                                                                        ADV. P. NO. 10-1081

DAVID V. ADLER, CHAPTER 7 TRUSTEE
and CAROLYN WILLIAMS ALONZO
    DEFENDANTS

*consolidated for trial with*

DAVID V. ADLER, CHAPTER 7 TRUSTEE
    PLAINTIFF

VERSUS                                                                                         ADV. P. NO. 10-1083

E.H.MITCHELL & COMPANY, L.L.C.
    DEFENDANT

## MEMORANDUM OPINION

      This matter came before the court on April 7, 2011 as a trial on the complaint in case number 10-1081 of plaintiff, E.H. Mitchell & Company, L.L.C. ("Mitchell") seeking to have property of the debtor Carolyn Williams Alonzo ("Mrs. Alonzo") declared community property and seeking a judgment recognizing certain liens Mitchell claims to have on property of the bankruptcy estate. David V. Adler, the Chapter 7 Trustee ("Trustee") filed a counterclaim seeking adjudication under Louisiana Civil Code Article 2342 that the property in question is separate property of Mrs. Alonzo and re-urging the causes of action the Trustee filed in case

number 10-1083. This case was consolidated for trial with case number 10-1083, in which the Trustee as plaintiff filed an objection to Mitchell's proof of claim. The Trustee's complaint also brought causes of action under sections 544, 550 and 551 of the Bankruptcy Code. As set forth more fully below, the court finds that Mitchell does not have a valid lien against any of the properties in question. Thus, Mitchell's complaint is dismissed. The court finds for the Trustee on parts of his complaint and dismisses other parts.

I. **Background Facts**

Mitchell filed a proof of claim in the Alonzo bankruptcy case on April 19, 2010 in the amount of $6,727,255.95. Mitchell's proof of claim was amended twice. In its proof of claim and in Adversary Proceeding Number 10-1081, Mitchell contends that it should be recognized as holding a secured claim against certain immovable property belonging to the Alonzo bankruptcy estate. The Trustee filed Adversary Proceeding Number 10-1083 to object to Mitchell's proof of claim.

Although Mitchell's complaint claims to have liens on several pieces of property, at trial, the parties stipulated that there were only five parcels of property that were affected by the claimed lien. Three of the properties Mrs. Alonzo claims as her separate property. They are as follows:

(i)  Lot 29, Grande Hills Estates;[1]

(ii) Lots 85 and 87, Spring River Park Subdivision;[2]

---

[1] Trial Exhibit 2.

[2] Trial Exhibit 3.

(iii) Lot 78, Spring River Park Subdivision.[3]

These are the properties that the Trustee argues are separate property of Mrs. Alonzo and that Mitchell seeks to have the court declare community property.

A fourth piece of property the parties agree is community property:

(iv) Lot 91-A, Old Landing Subdivision.[4]

Finally, there is a fifth piece of property that the parties agree is Mrs. Alonzo's separate property:

(v) a 50% undivided interest in Lot 14, Bonita Estates Subdivision.[5]

The court finds that the remainder of the properties named in Mitchell's complaint are not subject to any lien by Mitchell, and as to those properties, Mitchell's complaint is dismissed. The remainder of this opinion will address the five properties listed above, over which there is still a dispute.

      Between November 2006 and October 2007, the Alonzos purported to transfer each of the properties into the Carolyn Williams Alonzo and Charles Paul Alonzo, Jr. Irrevocable Inter Vivos Trust (the "Trust"). On November 6, 2007, Mitchell instituted a revocatory action in Louisiana state court seeking to avoid the transfer of the properties into the Trust. On March 15, 2010, the revocatory action was removed to this court, and the Trustee was substituted as the proper party plaintiff.[6] On June 14, 2010 this court entered a consent judgment in the removed

---

[3] Trial Exhibit 4.

[4] Trial Exhibit 5.

[5] Trial Exhibit 6.

[6] Adversary Proceeding Number 10-1026.

revocatory action. The consent judgment (i) avoided the transfers of the property into the Trust; (ii) put the Trustee into possession and ownership of the property; and (iii) pursuant to § 551 of the Bankruptcy Code, preserved the avoided transfers for the benefit of the estate above any other rights to the property allegedly acquired by subsequent parties.[7] The consent judgment also preserved Mitchell's right to assert whatever liens or claims it believed it had against the property, which it did by filing this adversary proceeding.

## II.    Legal Analysis

Mitchell's complaint can be broken into two separate parts. First, because Mitchell's judgment is against Mr. Alonzo personally, and not Mrs. Alonzo, Mitchell seeks to bring property Mrs. Alonzo has claimed as her separate property into the community so that it can be used to satisfy Mitchell's claim. While the court finds that the property was not separate property under Louisiana law, all of the property of the Alonzo's, whether separate or community, is now property of the bankruptcy estate of the joint debtors, so its classification prior to the filing of the bankruptcy petition is largely irrelevant. Second, Mitchell seeks recognition that it has a valid lien against any property in which Mr. Alonzo has an ownership interest, including all community property of the Alonzos. The court finds that Mitchell does not hold a valid lien against any of the Alonzos' property.

### A.    Whether Property Claimed as Separate Property of Mrs. Alonzo is really Community Property.

Louisiana is a community property state, and although a married couple is allowed to opt out of the legal regime of community of acquets and gains, they must take specific steps to do

---

[7] Pleading 11 in Adv. P. No. 10-1026.

so.[8] For a couple, married in Louisiana, the Louisiana Civil Code requires that the couple enter into a matrimonial agreement modifying the regime prior to the marriage, or, if they wish to alter the regime after marriage, the couple must obtain approval by a state court of competent jurisdiction.[9] "A matrimonial agreement, or a judgment establishing a regime of separation of property is effective toward third persons as to immovable property, when filed for registry in the conveyance records of the parish in which the property is situated. . . ."[10] The Alonzos did not enter into a separate property agreement before they married in 2000, and Mitchell relies on this to prove its argument that Mrs. Alonzo's property cannot be separate property.

The Trustee argues that under 11 U.S.C. 544(a)(3), it steps into the shoes of a bona fide purchaser of real property,[11] and that under Louisiana Civil Code Article 2342, Mrs. Alonzo's declaration that the properties in question are her separate property cannot be challenged. Under section 544(a)(3) the trustee has the rights and powers to avoid any lien or transfer avoidable by a hypothetical bona fide purchaser of real property of the debtor as of the date of the

---

[8] Louisiana Civil Code Articles 2325 *et seq.*

[9] Louisiana Civil Code Article 2329.

[10] Louisiana Civil Code Article 2332.

[11] Section 544(a)(3) states:

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by –
> * * *
> a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such purchaser exists.

5

commencement of the case. These rights and powers are conferred on the trustee by federal law.[12] The extent of the trustee's rights as a bona fide purchaser of real property, however, is measured by the substantive law of the state in which the property in question is located.[13] The statutory language, "without regard to any knowledge of the trustee or of any creditor" refers to actual knowledge but does not affect state laws relating to constructive notice.[14] The phrase has been construed by the courts not to affect actions which, under applicable nonbankruptcy law, serve to give competing claimants constructive notice of the claim. When an otherwise bona fide purchaser of real estate would be subject to a claim because of constructive notice under state law, the trustee cannot avoid the claim.[15] A hypothetical bona fide purchaser under section 544(a)(3) is a purchaser who under state law could have conducted a title search, paid value for the property and perfected his interest as a legal title holder as of the date of the commencement of the case.[16] The trustee, just as a hypothetical purchaser, is amenable to state recording statutes and other nonbankruptcy laws which would prevent him from properly perfecting a transfer from the debtor at the time of the commencement of the case. Thus, although section 544 provides that a trustee's actual knowledge is not relevant, a trustee is still bound by the state law regarding recordation and constructive notice, as well as other state law limitations upon bona fide third

---

[12] *Matter of Robertson,* 203 F.3d 855, 864 (5th Cir. 2000).

[13] *Id.; Matter of Zedda,* 103 F.3d 1195 (5th Cir. 1997).

[14] *Robertson,* 203 F.3d at 864.

[15] *Id.*

[16] *Id.*

party purchaser status.[17]

Thus, the court must look to Louisiana law to determine the rights of the Trustee as a bona fide purchaser of real property. Louisiana Civil Code Article 2342 states, in part:

- A. A declaration in an act of acquisition that things are acquired with separate funds as the separate property of a spouse may be controverted by the other spouse unless he concurred in the act. It may also be controverted by the forced heirs and the creditors of the spouses, despite the concurrence of the other spouse.

- B. Nevertheless, when there has been such a declaration, an alienation, encumbrance, or lease of the thing by onerus title, during the community regime or thereafter, may not be set aside on the ground of the falsity of the declaration.

The gist of the Trustee's argument is that because the acts of cash sale by which Mrs. Alonzo acquired the properties declared that they were her separate property, and those acts were recorded, and then Mrs. Alonzo alone subsequently transferred those properties into the Trust, Mitchell cannot challenge the transfers on the ground of the falsity of the declaration, which is what Mitchell seeks to do.

There is a paucity of Louisiana case law addressing Article 2342, but one problem the court finds with the Trustee's argument is that the Civil Code Article requires that the alienation of the property be by *onerus* title. From the documents entered into evidence at the trial, it appears that the title to Mrs. Alonzo's separate property was transferred to the Trust by an act of donation. The Louisiana Civil Code defines an onerus donation as one that is burdened with an obligation imposed on the donee that results in a material advantage to the donor.[18] Here, there

---

[17] *Id.*

[18] Louisiana Civil Code Article 1526.

was no obligation imposed on the Trust resulting in a material advantage to Mrs. Alonzo because of the transfer, within the meaning of the Civil Code Article. Thus, the court finds that the requirement in Article 2342 that the property be alienated by onerus title has not been met.

This does not really affect the current status of the property, however, because in pursuing the revocatory action and obtaining the consent judgment, the separate property of Mrs. Alonzo that had been transferred to the Trust was placed in the possession of the Trustee. Had it been deemed community property before title had been transferred to the Trust, the Trustee could still have pursued the revocatory action and obtained a consent judgment placing him in possession of the property. The property currently belongs to the debtors' estate, and Mitchell as a creditor can look to that estate to be paid whatever it might be determined that Mitchell is owed when the Trustee makes payment on the claims of the estate's creditors.

**B.     Whether Mitchell has a valid lien against any property of the Alonzos.**

Mitchell asserts that it has a lien against property of the Alonzos by virtue of a judgment it obtained on March 18, 2009 in the 22nd Judicial District Court for the Parish of St. Tammany, State of Louisiana.[19] Mitchell recorded this judgment in the conveyance records for St. Tammany Parish on April 3, 2009.[20] Mitchell also took steps to execute on this judgment by filing several documents to institute garnishment proceedings. Further during the pendency of the state court action resulting in the judgment, Mitchell filed various notices of lis pendens, which it now contends constitute liens against the properties.

The Trustee contends that Mitchell holds no valid lien on the properties for three reasons.

---

[19] Trial Exhibit 46.

[20] *Id.*

First, the Trustee argues that the judgment, which was recorded on April 3, 2009, was against Mr. Alonzo personally, and on that date, all of his property had been transferred into the Trust, which was not named in the judgment; second, the March 18, 2009 judgment that Mitchell recorded was not a final judgment, so Mitchell's attempts at garnishment proceedings were not proper; and third, the notices of lis pendens filed by Mitchell did not create a lien.

### 1. The March 18, 2009 Judgment and the Trust

The Trust was created by the Alonzos and filed into the public records in November 2006.[21] On November 8, 2006, Mr. and Mrs. Alonzo each executed a separate Act of Donation transferring to the Trust their interests in four of the five properties at issue in this matter.[22] In a separate document entitled "Donation Inter Vivos", Mrs. Alonzo donated the fifth and final piece of property, Lot 78, Spring River Park Subdivision on October 2, 2007.[23] Thus, each of the properties in question here had been transferred into the Trust and the transfers recorded in the public records well before Mitchell recorded its judgment against Mr. Alonzo on April 3, 2009. Mitchell is correct that a judicial mortgage is created against real property by filing a judgment with the recorder of mortgages.[24] When Mitchell recorded its judgment on April 3, 2009, it created a judicial mortgage against any real property of Mr. Alonzo. Unfortunately for Mitchell, at that time, neither Mr. Alonzo nor the Alonzos as a marital community owned any of the property in question here. It had already been transferred to the Trust. Thus, the court finds that

---

[21] Trial Exhibits 7 and 8.

[22] Trial Exhibits 9 and 10. The properties are Lot 29, Grande Hill Estates; Lots 85 and 87, Spring River Park; Lot 14, Bonita Estates; and Lot 91-A, Old Landing.

[23] Trial Exhibit 11.

[24] Louisiana Civil Code Article 3300.

recordation of Mitchell's judgment had no effect as to the property owned by the Trust.

Mitchell appears to have recognized this, because it filed a suit against the Alonzos on November 6, 2007 seeking to annul the acts of donation to the Trust (the "revocatory action").[25] This is the action in which the Trustee was substituted as plaintiff and settled through a consent judgment placing all of the Trust property in possession of the bankruptcy debtors' estate.[26] Until the consent judgment was entered on June 14, 2010, the Trust held title to the properties. Thus, Mitchell's recorded judgment, which was against Mr. Alonzo personally, did not affect the properties, which were titled in the Trust.

## 2. The Garnishment Proceedings

Mitchell next argues that its garnishment proceedings somehow secure its claim against the properties. Mitchell's argument here is unclear, because garnishment is not the same as a lien, rather garnishment is a way to execute on a judgment lien. To support its argument, Mitchell entered into evidence several documents it filed requesting garnishment.[27]

The Trustee argues that these documents have no effect because 1) a party to a suit is not entitled to begin garnishment proceedings before it has a final judgment, which the Mitchell judgement was not, and 2) the garnishment documents were not properly served, and thus were not effective. Although given the opportunity to do so, Mitchell filed no reply brief addressing the Trustee's argument that its judgment is not a final judgment, and Mitchell did not address the issue in its initial post-trial brief.

---

[25] Trial Exhibit 16.

[26] Pleading 11 in Adv. P. No. 10-1026.

[27] Trial Exhibits 41 to 63 and 70 to 75.

The court agrees with the Trustee that the judgment was not a final judgment under Louisiana law, and that Mitchell was not entitled to execute on the judgment. Louisiana Code of Civil Procedure Article 1915(B) states:

> When a court renders a partial judgment or a partial summary judgment or sustains an exception in part, as to one or more, but less than all of the claims, demands, issues, or theories, whether in an original demand, reconventional demand, cross-claim, third party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.

The March 18, 2009 judgment itself states that there are: "...attorney's fees and unresolved legal issues, to be determined by this court after hearing..."[28] In fact, to the best of this court's knowledge, the March 18, 2009 judgment is still not a final judgment because Mitchell has yet to go back to the state court to have it hear the attorney's fees issue and whatever unresolved legal issues remain.

Because the judgment was not final, Mitchell was not entitled to execute on the judgment. Louisiana Code of Civil Procedure Article 2252 states:

> A judgment creditor may proceed with the execution of a judgment only after the delay for a suspensive appeal therefrom has elapsed; however, a recordation of a judgment in the mortgage records prior to the lapsing of the delay for a suspensive appeal does not begin proceedings for the execution of the judgment.

Reading these two civil procedure articles in conjunction with the judgment leads the court to the conclusion that the March 18, 2009 judgment was not a final judgment under Louisiana law when Mitchell began its garnishment proceedings in June 2009, and thus, the garnishment

---

[28] Trial Exhibit 46 at p. 2.

proceedings had no effect.[29]

### 3. The Notices of Lis Pendens

A notice of lis pendens that is properly recorded must be filed in accordance with Louisiana Code of Civil Procedure Articles 3751 *et. seq.* The purpose of a notice of lis pendens is to give effective notice to third persons of the pendency of litigation affecting title to real property.[30] The recordation of a notice of lis pendens makes the outcome of the suit of which notice is given binding on third parties.[31] A notice of lis pendens is not a lien.[32] Thus, the court cannot accept Mitchell's argument that the various notices of lis pendens that it filed constitute a lien on any of the property in question.

### C. **The Destin Judgment**

Adversary number 10-1083 contains a motion to intervene, which was granted, and an answer, counterclaim and cross-claim filed by the trustee for a related bankruptcy case (the "Phoenix Trustee").[33] The Phoenix Trustee is the holder of a judgment (the "Destin Judgment") against the Alonzos individually. The Destin Judgment was recorded on January 9, 2009.[34]

---

[29] *Nassau Realty Co., Inc. v. Brown*, 332 So.2d 206 (La. 1976) (premature execution of writ of fieri facias constituted wrongful seizure such that illegal seizure should be dissolved).

[30] *Whitney Nat. Bank v. McCrossen*, 635 So.2d 401 (La.App. 4 Cir. 1994).

[31] *Mortgage Electronic Registration Sysytems, Inc. v. Bynum,* 879 So.2d 807 (La.App. 1 Cir. 2004);

[32] *Webb v Webb,* 835 So.2d 713 (La.App. 1 Cir. 2002); *Whitney Nat. Bank v. McCrossen*, 635 So.2d 401 (La.App. 4 Cir. 1994).

[33] The debtor in that case is Phoenix Associates Land Syndicate, Case No. 09-11743, Chapter 7.

[34] Joint Pre-Trial Order, Statement of Uncontested Facts No. 24; Pleading No. 15 in Adv.P. No. 10-1081.

Thus, the Phoenix Trustee contends that the Destin Judgment comes ahead of Mitchell's judgment in the event that the court holds that the properties were titled in the Alonzos names and not in the Trust. For the same reason that the court found that Mitchell does not have a lien on the properties, the court also finds that the Phoenix Trustee does not have a lien on the properties. The properties were titled in the Trust at the time the Destin Judgment was recorded.

### III. Conclusion

For the reasons set forth above, the court dismisses the complaint of Mitchell and the Trustee's counterclaim in Adversary Number 10-1081. The court also dismisses the cross-claim of the Phoenix Trustee in Adversary Number 10-1083. As to the Trustee's complaint in Adversary Number 10-1083, the Trustee in its complaint initially asked the court for a number of things that it did not argue for in its brief or present evidence at trial to support. Thus, the court will dismiss all parts of the Trustee's complaint that are not specifically addressed here and in the judgment accompanying this opinion. First, the court finds that Mitchell has no valid secured claim, lien, right, interest or privilege in the properties at issue in this case. Second, the court declares that any liens asserted by Mitchell are subordinate to the estate's rights to the properties and the proceeds thereof pursuant to 11 U.S.C. § 551 and the consent judgment. Third, the court awards the Trustee the costs of this proceeding.

New Orleans, Louisiana, October 7, 2011.

_J. A. Brown_
Jerry A. Brown
U.S. Bankruptcy Judge